I'd like to thank again Judge Liz Bogdick for helping us out this morning. Judge Bogdick serves on the U.S. District Court, Eastern District of Pennsylvania. We're very, Judge Shigeru Sano, very grateful. Let's call the first case. U.S. v. Waller. Yes, Petra Powell? Yes, good morning. Good morning. Anything else to correct me in? My name is Mary Petra Powell. I was the court's clinician. I'd like to go through Mr. Waller. Very well. The single contested issue in this case was whether Michael Waller possessed the 1.63 grams of heroin. Was the intent distributed or whether he simply possessed it for personal use? Let me just get a question right out of the box. You seem to concede that he did possess it. What relief are you looking for? For a retrial on everything or just the possession of intent to distribute? I think it would need to be a re-enactment for a new trial on all three since all three were tried together and it was a single verdict. Right. Okay. There was no direct evidence of intent and circumstantial evidence of intent to distribute was the critical at best. The district court's anonymous instruction allowed the jury to infer intent to distribute from Mr. Waller's silence before trial, after arrest, and at trial, and this is the error that requires reversal. Could you walk me through how the court's instructions would influence the reasoning of the jury to conclude that he must have been engaged in the distribution of narcotics? Yes. Why would they make that inference? Well, first and foremost, Griffin United States Supreme Court case tells us that a juror's natural inclination, natural and irresistible inclination, is to infer guilt from silence. One would have expected him to. Well, but your position is that at the scene of the arrest, he should have said to the police officers, because those drugs are not to distribute. Those drugs are mine because I have a drug habit. Is that your position? To the extent that's mitigating it is because it actually cost him another five-year consecutive mandatory. Well, I understand that. That's the result of the conviction. But I'm wondering is it reasonable for a jury to infer that because a person being arrested doesn't make a statement that it would infer that he or she must be distributing drugs? It really would because you would expect the defendant, or the Supreme Court has repeatedly recognized, you would expect the defendant to offer up mitigation if he has it. And at that moment, the mitigation is that I just bought it from that guy. I'm not the seller. He's the seller. He would have made a statement, and the jury would naturally infer from his failure to make a statement and offer the defense that he's offering in trial. Is this, say, a violation of the right to remain silent? Or is your claim that the judge's instruction prejudiced the defendant's right to remain silent or to waive their trial? My position primarily is it's a Fifth Amendment violation, and it's a jury instruction resulting in a Fifth Amendment violation, but it also goes to due process in terms of fairness. I didn't see. Perhaps it's here in the papers, but I didn't see anything about the closing arguments. The prosecutor did not capitalize on the omissions, the failure to make statements in his closing argument. But Griffith tells us that either the prosecutor's comments implicating the right to silence or a court's instructions implicating or burdening the right to silence are constitutional error, require reversal. And Griffith goes further and says, yes, it's naturally irresistible that the jury's going to infer guilt from the exercise of the right to silence. Even people who should know better will make that inference. What the jury will infer on its own is one thing. What the jury will infer when that inference has been validated by the court's instruction is entirely a different matter, and that's why reversal is required. And is there any distinction to be drawn between things not said pre-arrest and things not said post-arrest? I understand the government makes that distinction. I suggest the court doesn't need to weigh in on that issue, first because the trial counsel at the time understood the court to be referring broadly to pre-arrest, post-arrest, and trial counsel. There's no temporal limitation in the instruction, right? It could be at a trial. I was just going to say that to the extent there's some ambiguity, the Supreme Court has also said that the power of correction substitutes reading when the trial counsel or the court has spoken on the meaning of what could be a mistake. There was an objection at trial to the jury instruction? Yes, there was. There seemed to be an abundance of evidence establishing possession and the possession of a handgun. What about harmless error? Harmless error. I believe that, first of all, the burden is on the government, of course, to prove beyond a reasonable doubt that the jury's instruction had no effect on the verdict or could not have contributed to the verdict. Well, let's assume the error. Why was it harmless given all the other evidence that was presented? Well, it's my position that intent was not an ancillary issue. Intent was the only contested issue in the whole trial. There was no direct evidence of intent, meaning nobody witnessed a controlled fire. There was no hand-to-hand exchange. There was no switch testifying. Well, there was quite a bit. There was a possession of 50 packets of heroin that were separate. And the argument, or not the argument, but the evidence, as I recall, was that it was more than a user would normally carry. Actually, that was not the evidence. The expert, every piece of evidence that was offered was countered by equally effective evidence on the other side. It was countered, but there was evidence that he possessed 50 separate packets of heroin. The expert testified, yes, that he had never seen a user with 52 bags. He also testified that an addict would use 5 to 10 bags a day, which would be 35 to 70 bags for a week's worth of heroin. And we know we have 52 bags when there's two people in the car. So, again, the 52 bags cuts both ways. The expert also said a good customer, when an addict would be a good customer, would get extra. And here we have four packets of 10 and one packet of 12. So you get the two extra bonus packets for being a good customer. There was no evidence. To me, the most important factor is that there was no cash on him. This is a stop at 3.30 in the morning, about 5 miles from his home. He's got essentially a week's worth of heroin to an addict. He has no cash on him. If he'd been selling all night, you'd expect that he'd have cash. Well, maybe he was just starting. In other words, we don't have to conclude that he hadn't been selling all night, if he just began the venture. I believe that. The important thing to remember is that the defendant has no obligation to prove the evidence wasn't sufficient to support conviction. But what is the best evidence you have for us to conclude that he could conceivably be a user or an addict? He was less than 5 miles from his home with essentially a week's worth of heroin for a cocaine addict. The evidence from the perspective of a smuggler, not an abductor, that he had no indicia of sale, including cash, O'Sheys, glossy and baggies, the typical indicia of sale. The other evidence that the defense counsel pointed out is the absence of a photo op investigation, which would have easily determined one way or the other whether in his home one can have this either indicia of sale or indicia of abuse. The evidence really was the circumstantial evidence of intent to distribute certainly was sufficient, but it's equivocal, and the defendant only needs to really show that it's equivocal because it burns on the government to prove the unreasonable doubt that the heir could not have contributed to the verdict. But wasn't that evidence that there were no physical marks that would be expected of a user? Or a intravenous drug user, but none of them smarter than heroin? And when you ask me about my best piece of evidence, I neglected to tell you I believe the best piece of evidence is the fact that the district court here gave a lesser-included offense instruction, and the case law from the Supreme Court and other courts is clear. You only get a lesser-included instruction if the evidence is such that a rational jury could find the lesser and yet acquit of the greater. So the fact that the trial court gave this lesser-included is evidence that the possession with intent to distribute evidence was not overwhelming. You don't object to the lesser-included offense, do you? No, we wanted the lesser-included. We asked for it and recognized that the evidence presented in trial was sufficient to support it. If we were to get over this issue, there are other issues that you present concerning statements made by the U.S. Attorney. Yes. Should I move on to that? The second issue, of course, is the prosecutor during closing the court may be jury of possible sentencing consequences. Again, the defense is that Mr. Lawler had this one week's worth of heroin at $330 million with no cash, not because he was dealing with it, but because he was on a buying trip. And in response, the prosecutor says, well, he's not Pablo Escobar, including he that is a thug. I want you, jury, I want to come out with a sentence to you, jury. The judge can take into account what level of drug dealer he is, and that's not your responsibility. So what this instruction does is essentially knock the jury off the hook. It decreases the burden. Didn't the prosecutor just really encourage the jury, don't worry about the consequences? I mean, perhaps in a perfect world he wouldn't have mentioned it at all, but isn't there a substance that don't consider the consequences? That's for the judge. He doesn't say don't consider. He says, I want to talk to you about the sentence. And he says, he tells the jury how the judge will consider factors to determine the sentence. Your point is that the implication to the jury is go ahead and convict him, because if he needs a break, the judge will give him a break. Exactly. And that error is never cured. It is through the instruction, the general instruction that's given, because it doesn't address those points. And it's not cured, moreover, because that's an early statement. However, can't counsel comment on the fact that sentencing is the judge's prerogative? Why is that prejudicial? Well, there'd be no reason to say that, but had he said that, I would have had an objection. He didn't say that. That's what the instruction, the general cautionary instruction said. He told them, I want to point out sentence. There's no legitimate reason to ever point out sentence. And he tells them, those facts that the defendant wants you to consider to determine, he says, this is simple possession as opposed to PWID, those facts will be considered by the judge. So if you screw up or if you're on the fence, don't worry about it. The judge can fix that. If you believe an offense that you're struggling with is subject to a greater penalty, you're going to have less tolerance for doubt. If you believe that the penalty might be too severe, you're going to have more tolerance for doubt. So in that way, the comments by the prosecutor, which are just not legitimate, prejudice. We can do that under plain error, right? There's no objection. But the error and lowering the reasonable doubt standard must affect the fairness and integrity of a judicial proceeding. Ms. Peter-Powell, we'll get you back on the model. Thank you very much. Ms. Harrington. May it please the Court, Rebecca Haywood on behalf of the United States of America. I am asking you to affirm the conviction in this case. I'll start with the first issue. The jury instruction in this case does not relate to silence. It relates to statements made or omitted. That phrase basically presumes that there's a statement in the first instance. This is not a case like Griffin where the prosecutor was referring to a defendant's silence or the court referred to silence. This is a case where the jury instruction talked about statements made or omitted. I understand the point you're making. This implies that statements were made? Correct, correct. Correct how? The court told the jury that they could consider any statements made or omitted. That presumes that there's a statement in the first instance. How do I know that if I'm a juror? I hear what you're saying, but I don't really know. The jury couldn't under those instructions find, well, the defendant never said anything at all. Curious, I wonder why. There has to be some predicates taken and made under this instruction before there can be an omission. The phrase needs that interpretation. Also, it says in evidence. In this case, there were no comments by the prosecutor, for instance, that referenced the fact that the defendant didn't make any statements at all. This simply wasn't a case about silence. I don't know. Why couldn't the judge's instruction suggest to the jury that the defendant had an obligation to deny that he was dealing drugs? Because the court specifically told the jury at one point that the jury could not consider the defendant's failure to testify. The court made it clear. But testifying is a new court activity. What we're talking about is what happened at the time of his arrest. Correct, and that's where I think it's very important to talk about the scope of the Fifth Amendment. The defendant's position that the Fifth Amendment makes silence at all times in any circumstance irrelevant is simply not the case. True, but also, according to your adversary, there appears to be no temporal limitation here. It didn't say pre-arrest. I mean, couldn't a statement omitted be something that happened at trial as well? No, because the phrase specifically says statements made or omitted that's in evidence. It's not talking about statements at trial. In fact, the court specifically clarified and made an express instruction with regard to silence at trial telling the jury that the jury could simply not consider the defendant's failure to testify. I wonder why the necessity of the charge. I mean, are there statements that the defendant could have omitted at trial? I really don't follow that. I actually worked for this judge for five years. I believe this is a standard instruction from 1978 when the court has simply given this instruction. I understand it's a standard instruction. I still don't understand what is meant by statements made or omitted at trial when the defendant is a criminal defendant. I mean, is he supposed to offer a statement at trial? Exactly. The instruction was given in terms of a defendant's statements made or omitted. Take the case I was thinking of in the example of a fraud case where a person who's committing a fraud knows that a stock has no value. Does this instruction relate to anything that happened in the trial? Absolutely not. I mean, it does not relate to anything that happened in the trial because silence and statements really just weren't part of this case. Maybe I didn't ask the question correctly. Does the judge's instruction relate to anything that happened in the trial? There was one statement made when the defendant, after he struggled, stated that he was done. There was a statement made. But again, the Fifth Amendment. So there should have been a follow-up statement, but it wasn't really? No, Your Honor. The Fifth Amendment protection that's being raised in this case is a privilege against self-incrimination. The privilege itself implies two things. First of all, there has to be some type of government compulsion to speak for the Fifth Amendment itself, the privilege to even apply. Secondly, it has to be invoked. In this case, there was no – a few of the cases that I cited in my brief, one case the defendant said something like, I'm not going to talk to you. Introducing that is basically referring to the invocation of the right. This woman referred to the instruction that was given as a standard instruction back in the late 1970s. You're referring to the fact that it was a Devitt and Blackmore instruction. Correct. Is that correct? That's correct. And you tell us in your brief that the Devitt and Blackmore instruction, quote, has been expressly approved by this court in the United States v. Garrett. I wonder if that isn't something that overstates what this court said in the United States v. Garrett. Expressly approved? Well, this court said that that instruction may be helpful to district courts instructing in criminal cases. Helpful with respect to what? Which seems to place the burden of proof on the defendant. Isn't that what this court was saying? That is true. So there was nothing in the reference to the Devitt and Blackmore instruction as described by this court as possibly helpful and related at all to the language about statements made in the minute, was there? That is correct. So could we really characterize this as express approval by this court? Well, this court did state the instruction could be helpful, but not necessarily. But not as to a non-pertinent fact. That's correct. So we really might disregard that. That's correct. Yeah. If we conclude that there was error here, you have a harmless error standard that you think you could satisfy? Certainly. This court recently, in September of 2010, decided the case of Virgin Islands v. Martinez. In that case, interestingly, there was a Doyle violation, a due process violation under the Fifth Amendment when there was a reference to post-Miranda silence. But the error was held to be harmless. And interestingly, this court noted that regardless of whether the evidence is overwhelming, you have to look to three things that this court considered in Martinez. First, despite the fact that the evidence wasn't overwhelming, the court noted that there was one reference. In this case, there's one basically phrase in the jury instruction that as a whole the rest of the instructions are following. And ambiguous. I mean, I understand the court's concern with regard to statements made or omitted, but that's one phrase in the entirety of the jury instruction. The prosecutor never once made a reference to silence. The silence wasn't an issue, really. But the judge insisted on keeping that language in when it was objected to. That is true. That suggests that the judge thought that the phrase omitted had some pertinence for the jury. Well, regardless of whether the judge felt that way, the evidence in this case was much more so than the evidence in Martinez, even. This case was about the testimony of the expert. If you believe the expert in this case, Mike Warfield, the state trooper with six million years' experience, would testify he had never once in all the hundreds of cases he's had seen a user of heroin have 52 packets. The drugs were worth between $500 and $1,000. There was a loaded weapon on this defendant. And like all of those circumstances, the expert testimony established that this was not an use amount. This was a distribution amount. And this jury instruction, whether error or not, did not relate or have anything to do with the testimony of the expert that was given in this case. So it's our position that the evidence in this case wasn't wrong. In addition, when you have the fact that this was one instruction that was made in error, and it's our position that it wasn't ambiguous as to whether it was error, that would prove that the error harmless. Actually, there was a collection of errors, I think, in this case. It wasn't just the judge's instructions. It was several comments made by the U.S. attorney in this case. And the one mentioned by Ms. Pietropilo was the statement concerning the role of the judge in sentencing. And if I have the quote here, let me take a look. The U.S. attorney says to the jury, the judge can take into consideration what level of a drug dealer he is, and that is not your responsibility. And, of course, the suggestion is to the jury, don't worry about him being a bad person. The judge will take care of any leniency. You can go ahead and convict. That's according to the appellant, the implication. And there's another statement of the U.S. attorney to the jury concerning the anonymity of the jury. You're all anonymous jurists suggesting that this is a real bad person, and that's why you are anonymous. So I'm wondering if these two statements, along with the judge's instruction, might not collectively affect the fairness of the proceeding. It doesn't, Your Honor. Taking the statements of the prosecutor, first of all, there was no objection. We're here on a clear and air review of those statements. By way of an explanation and not an excuse, there was a misstatement. The jury was not anonymous in this case. Well, wait a second. Maybe you're right. I don't know. But why would the U.S. attorney say your names are not? We don't know who you are. We don't know who your names are. That was a mistake. The prosecutor was attempting to say to the jury, you will never have to answer to either myself or defense counsel about your verdict. Yes, it was a mistake. How do you know what the U.S. attorney had in mind to say or didn't say? Perhaps it was a statement, but he didn't. If you read further, what he said is you're anonymous. He did say you're anonymous. He did, and it was a mistake. It was a mistake. I cannot dispute that there wasn't that mistake that has occurred in this case. But it's not prosecutorial misconduct that results in plain error. There was no objection. In that regard, the mistake wasn't called. The attention to it was not called by either side. And, again, the prosecutor went further to explain you will never have to answer to either of us. I don't think you've quite got the thrust of Judge Fordy's question, at least as I understood that question. If one of the prosecutor's mistakes shouldn't be considered in aggregation with the court's mistaken charge, if we conclude that there was a mistake and that it's the entirety of, was this a fair trial that we have to consider? It was a fair trial, Your Honor. The defendant had counsel. The jury was impartial. The jury was charged with one small exception correctly. There was no objection made with regard to the prosecutor's statement and no attention called to that. Silence was simply not an issue here. And, in addition, the evidence was overwhelming. I don't understand what you said, that silence is not an issue. Well, again... That's the very issue that's being pressed, is it not? It is, Your Honor, but it was not made an issue by the prosecutor. I misspoke. The prosecutor did not raise as an argument that the defendant's failure to make a statement in this case somehow affected and indicated an evidence of guilt. And, again, when you look at the testimony, this whole case was about the testimony of Officer Warfield. And he clearly established, through his testimony, that a defendant who has a loaded weapon, 52 stick bags of heroin, worth between $500 to $1,000, with ultimate physical manifestations of abuse of heroin, is guilty of the crime charged. He's a little overblown, though. I mean, yes, he had 52 packets. But, as we know, he didn't have a trunk full of heroin. He had what I think your expert said was like a packet equal, or a little bit more. And there were two people in the car. So, I mean, it's really like half a week's worth of heroin for two addicts? Worth between $500 and $1,000. And also with a loaded weapon. It was testified from the expert that drug users would typically not have weapons. The only time they would have it would be to trade for drugs. And Mr. Warren had both the drugs and the weapon on this person at this time. So that testimony was not contradicted at trial. So, in terms of the entirety of a fair trial here, Mr. Gavin's position was he was given a fair trial in this case. Anything further? Thank you. Thank you, Ms. Haley. Ms. Pietropower? Thank you. The initial part of Ms. Haley's argument I won't address because I did address it, I think, pretty effectively in the reply brief. I did want to talk about Judge Ponte's question. I do believe that you can consider the error in the aggregate. Whether under the plain error standard or under the harmless error standard, I do think that it's an aggregate consideration. And I say that because the evidence was not overwhelming. The evidence was 50-50. Certainly, there's sufficient evidence to support the conviction, and we didn't contend otherwise. But the evidence is a critical. It's not a question of whether you believe the government's expert in this case. You can believe everything he said and still come down the side of this was a simple possession case, not a possession with intent to deliver case. And I pointed out some of the things that the expert says, but with respect to the gun, the expert said drug users don't carry weapons. But then he said drug users do carry weapons because they sell them. They use them as cash for trade for drugs. And then he said drug dealers carry weapons. But he said drug dealers don't carry weapons if they're driving a car because it gives the police, if they stop them, grounds to search the whole car. His testimony cut both ways. There's no other way of looking at it. And because the testimony was a critical, because the evidence and intent to distribute was so critical, the government can't show that they can't get the harmless error standard, which requires overwhelming evidence. And that's why we can satisfy both the constitutional harmless error test and the plain error test. You're not seeking a retrial on all counts. I actually did request a retrial on all counts. I thought your concern was the statement made and how it may affect it. Mr. Waller's statement, or non-statement, what was Simon's at the time of your message? He was convicted of a separate offense, count one. Count one, yes, and he conceded his guilt. He conceded his guilt. You're not seeking a retrial on all counts. I asked for that to the extent that it's possible because the verdict was altogether that it was an error. I didn't ask for a retrial on just the second two counts. I'm not sure how that would work. You're asking for a retrial on the count that he has already conceded guilt? No, it went to trial. He didn't contest it at trial, I guess I should say. It went to trial. It was presented to the jury. The jury found guilt. I requested a retrial on all counts because it was tried together. I'm sure it's within the Court's discretion to do something different. If he were to be granted a retrial on the second two counts, he would certainly have no reason to question that. Thank you. Nothing further. Thank you very much. Thanks to both counsels. You're very welcome to remain. We shall take the case under advisement. Next matter, Peter Murphy v.